

**FILED & ENTERED**

**APR 11 2014**

**CLERK U.S. BANKRUPTCY COURT
Central District of California
BY** Fisher     **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Calsafe Transportation, Inc.<br><br><br><br>Debtor(s). | Case No.: 1:08-bk-15346-GM<br><br>CHAPTER 7<br><br>**MEMORANDUM OF OPINION GRANTING TRUSTEE'S MOTION FOR ORDER CONFIRMING THAT BANKRUPTCY ESTATE CAN RETAIN TAX REFUNDS (Docket #203)**<br><br>Date:  March 25, 2014<br>Time:  10:00 a.m.<br>Courtroom:   303 |

Diane Weil, as Chapter 7 Trustee ("Trustee") of Calsafe Transportation, Inc. ("Calsafe"), moves for an order confirming that the estate may retain the funds from two checks, one for $44,767.73 and the other for $63,557.10 (the "Refunds"), which the Trustee received from the IRS in 2011 (the "Motion").

Pegasus Transit, Inc. ("Pegasus") and the Internal Revenue Service ("IRS") have each filed oppositions to this motion (the "Pegasus Opposition" and the "IRS Opposition" respectively).  The Trustee filed an omnibus reply to the Pegasus

-1-

Opposition and the IRS Opposition (the "Reply").

Factual Background

Calsafe ceased operating in April 2008 and Pegasus took over Calsafe's operations. Pegasus obtained its own Tax Identification Number (TIN) and started making employment tax deposits.

Calsafe filed for Chapter 7 relief on July 28, 2008 and the Trustee was duly appointed as Chapter 7 Trustee.

Pegasus filed an Employer's Annual Federal Tax Return (Form 944) reporting employment tax liability of $53,356.96 for 2008.

In December 2009, Pegasus filed a second Form 944 reporting an additional employment tax liability for 2008 of $112,411.49, which Pegasus paid. *See* Exhibit C.[1] However, Pegasus used Calsafe's TIN on page 1 of this second 2009 Form 944 and its own TIN on page 2.[2] The IRS caught this mistake and processed it under Pegasus' TIN. *See* Exhibit D, which is a January 7, 2010 letter from IRS to Pegasus.

In March 2010, Pegasus filed an adjusted return (Form 944-X) claiming that the second Form 944 was sent in error and that Pegasus had no employees until October 2008. *See* Exhibit F.

As a result of this Form 944-X, the IRS created a 944 account for 2008 for Calsafe and moved the Pegasus employment deposits to this Calsafe 944 account. *See* Declaration of Joann Harrison, which is attached to the IRS Opposition as Exhibit A, ¶15. But the IRS "failed to transfer the corresponding liability of $112,411.49" to the

---

[1] All references to lettered exhibits refer to exhibits to the IRS Opposition and also to the less redacted version of these same exhibits attached to the Reply.
[2] In the copy of this document annexed as Exhibit C, an IRS employee hand corrected the first page by adding Pegasus' TIN, according to the attorney for IRS at the March 25, 2014 hearing on this matter.

new Calsafe account." *Id.* ¶ 17. "Later, when Calsafe's 944 account for 2008 was reviewed, the IRS noticed the surplus funds in Calsafe's account for 2008 without any corresponding liability." *Id.* ¶ 18.

The IRS moved the surplus funds from Calsafe's 2008 944 account to Calsafe's 941 accounts for the second and third quarters of 2008 (where there were some balances still due.)[3] *Id.* ¶21. These funds were first applied to the outstanding 941 obligations for the second and third quarters of 2008 (with remaining balance ultimately refunded to Calsafe.) *Id.* ¶ 22.

On March 1, 2010, after matching the W-2's Pegasus had issued to its employees to Pegasus' 944, the IRS assessed Pegasus for the $112,411.49. See Exhibit E.

On January 31, 2011, Pegasus sent the IRS a letter and a second Form 944-X, in which it notified the IRS that the prior deposits should be credited to Pegasus and not to Calsafe. Exhibits J & K. The IRS gave the credit, which resulted in both Calsafe and Pegasus receiving credits for the same deposits made by Pegasus.

The Refund checks were issued to the Trustee on 3/15/11. *See* Exhibits 5 and 6 to the Motion.

On March 8, 2013, the IRS sent the Trustee letters demanding return of the Refunds with penalties and interest. *See* Exhibits 7 & 8 to the Motion. Several times during March 2013, an accountant for the Trustee called the IRS seeking information (although the content of these discussions is the subject of some controversy). *Compare* Declaration of Richard Kapko ¶¶ 4-5, which is attached to the Motion, *with*

---

[3] Calsafe had 941 accounts, because it had filed a Form 941, Employer's Quarterly Federal Tax Return. The 944 accounts are for employers who file a Form 944, Employer's Annual Federal Tax Return. The IRS has extensive rules as to whether an employer must file quarterly or annual returns. IRS Opposition at 4 n.4.

IRS history transcripts, which are Exhibits L & Q.

On April 24, 2013, the IRS sent the Trustee letters informing her that "the time limitation for recovery of the refund that we sent you in error . . . has run out." Exhibits 9 & 10 to the Motion. The letters continued to say that any repayments of the Refunds would be voluntary.

Motion

The Trustee asserts that the IRS has agreed that the two-year statute of limitations for return of the Refunds has now expired, so the only way that the money can be returned is on a voluntary basis. The Trustee has included this money in the 2011 tax return as income.

The Trustee argues that under a stipulation with Pegasus Transit, Pegasus may not assert any interest in the Refunds. The Trustee filed a complaint for fraudulent transfer against the insiders including Pegasus (10-01297), which the Trustee asserted was a mere continuance of Calsafe. During settlement mediation, the Trustee revealed that she was holding the Refunds and considered them to be property of the estate. Counsel for Pegasus and its authorized representative responded that it was not an issue for them and they would continue to enter into the proposed compromise. The parties subsequently entered into a settlement agreement, in which the Defendants agreed to make certain payments and waived all claims against the estate. This settlement was approved by the Court in 2012 (dkt. 157), was subsequently amended and has been effectuated.

Opposition of Pegasus

While Pegasus did not assert any claim to tax refunds for Calsafe, it did not waive its claim to its own tax refund. Since these Refunds were erroneous, they are not for Calsafe. On April 13, 2013, Pegasus received an official notice from the IRS that they located and applied Pegasus's payments to the Pegasus account. Pegasus is not barred by a statute of limitations since the IRS determination did not occur until April 13, 2013. The IRS has decided that the true owner of the Refunds is Pegasus, not Calsafe.

Opposition by the IRS

The Trustee knew or should have known that these erroneous Refunds could not belong to Calsafe because they were for tax periods ending June 30, 2008 and September 30, 2008, by which time Calsafe had ceased operations and been taken over by Pegasus. This is the basis of the Trustee's adversary proceeding - that Calsafe ceased operations on April 18, 2008 and Pegasus took over the business the next day. Also, on March 21, 2011 the Trustee's accountant was informed by the IRS that the Refunds did not belong to Calsafe, but would be credited to Pegasus when Pegasus claimed it. The accountant was instructed that it "would be best to return the funds and negotiate ASAP."

The settlement between the Trustee and Pegasus does not bind the IRS. There is no refund due to Pegasus. It has a liability and these Refunds need to be returned to the IRS and applied to that liability. Pegasus is a separate taxpaying entity and Calsafe cannot dispute the tax liability of Pegasus. Pegasus followed the proper procedure by notifying the IRS and asking that the tax deposits be credited to the proper account. Pegasus also has no cause of action to bring a claim against Calsafe.

The automatic stay does not apply.  The erroneous Refunds are not property of the bankruptcy estate any more than stolen property or improperly received property can be retained.  Because the Debtor never had any equity in the Refunds that were erroneously issued to Calsafe from the employment tax deposits made by Pegasus, relief from the stay must be granted.

Although the statute of limitations expired in March 2013, the government has five years to file a suit to recover an erroneous refund if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact.  26 U.S.C. §6532(b).  This section must be construed in favor of the government.  The misrepresentation may be "material" even if it is not willful, intentional or knowingly made.

In the first 944-X, Pegasus represented that it did not start payroll until October 2008 and that it submitted the correct w-2s for all employees.  In its second 944-X, Pegasus asserted that it never filed Form 944 using Calsafe's TIN and it had no knowledge of that TIN and that Pegasus submitted its Form 944 reporting total taxes of $165,768.48.  These conflicting statements were material misrepresentations and that extends the statute of limitations to 5 years.

On March 15, 2013, Mr. Kapko indicated that the Trustee would be seeking court approval to return the Refunds and requested that interest be abated.  But the Trustee continued to hold the Refunds.  The Trustee waited until she thought that the statute of limitations had run to bring this motion.

Trustee Reply

The Trustee has acted in good faith.  The Trustee contacted the IRS when she

received the checks in 2011 and again in 2013 when she received the demand letter. The IRS refused to provide any details or follow-up with the Trustee.  This motion was filed in anticipation of closing the Calsafe estate and not because of any sinister purpose concerning the statute of limitations.  The IRS representative never told Kapko to return the Refunds.

In the adversary proceeding, the Trustee was arguing that any valuable rights of Pegasus were actually assets of the Calsafe bankruptcy estate.  So it made sense that these Refunds would be treated as property of the estate.

The IRS admits that the Refunds came from the Calsafe account because it considered Pegasus to be a successor employer to Calsafe and that the deposits came from the Calsafe accounts at the IRS.  The payment was the direct result of a metamorphosis to the business from Calsafe to Pegasus.

The two-year statute of limitations applies because there was no fraud or misrepresentation of a material fact.  The incorrect TIN (along with the correct one) on the Form 944 is a simple innocent misstatement and not a misrepresentation of a material fact which rises to gross negligence.  The IRS cannot show more than an inadvertent mistake on the Form 944 and the burden of proof is on the IRS.

As to errors on the first Form 944-X, the re-amended second form 944-X was sent by Pegasus on or about 1/31/11 and the IRS was put on notice through that form and the accompanying explanatory letter that Pegasus was claiming the money. Nevertheless the IRS mailed the Refunds two months later, by which time a review of the records at the IRS would have revealed that there was no misrepresentation and that there was no gross negligence.  Pegasus had corrected any error that it made by providing a writing that was received by the IRS before the Refunds were sent to the

Trustee.  Further the Refunds came from Calsafe's existing 941 accounts and not from the 944 account that the IRS had created after receiving the notice from Pegasus.

As to Pegasus, the position of the IRS in the spring of 2013 was that Pegasus should receive a credit and that the estate would not be pursued for the refund.  There is no reason to reopen the settlement or the dealing with the IRS.

Analysis

Pegasus has no right to these Refunds.  The IRS must credit Pegasus for its payments (as confirmed by the attorney for the IRS at the hearing on this matter), so Pegasus has no liability but received the credit that it intended to receive when it made these payments.  Furthermore, Pegasus did release the Trustee and the estate from all claims relating to the transfer to Pegasus and the bankruptcy case (among other things) and also waived all claims against the Estate.  *See* Settlement Agreements and Mutual Release, which is Exhibit 1 to the Motion, ¶¶ 5 & 6.  The Trustee has testified (and Pegasus has not disputed) that the Trustee informed Pegasus of her receipt of, and intent to retain, the Refunds at a mediation several months prior to entering into this settlement agreement.  Declaration of Diane Weil, which is attached to the Motion, ¶ 26.  She further testified that representatives of Pegasus responded that that would not be an issue for them.  *Id.*   Pegasus' attorney acknowledged at the March 25, 2014 hearing on this matter that Pegasus has no right to this refund.

It is undisputed that the settlement between Pegasus and the Trustee does not bind the IRS or affect the IRS' right to these Refunds.

However, the two-year statute of limitations on "Suits by the United States for recovery of erroneous refunds" may block the IRS:

-8-

> Recovery of an erroneous refund by suit under section 7405 [26 U.S.C. §7405] shall be allowed only if such suit is begun within 2 years after the making of such refund, except that such suit may be brought at any time within 5 years from the making of the refund if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact.

26 USCS §6532(b).[4] The Refunds were made when the checks were received by the Trustee (*O'Gilvie v. United States*, 519 U.S. 79, 91 (1996)), which was in March 2011. As the IRS has not brought suit to recover these payments and the two years elapsed over a year ago, the IRS may recover only is it can show: (1) that a misrepresentation of fact was made; (2) that the fact was material; and (3) that the misrepresentation induced the erroneous refund. See, e.g., *United States v. Indianapolis Athletic Club, Inc.*, 785 F. Supp. 1336, 1337-38 (S.D. Ind. 1991).

Most courts interpreting "misrepresentation of material fact" have held that it does not require intentional or knowing conduct, on the one hand, but that it does require something more than an innocent misstatement. *Lane v. United States*, 286 F.3d 723, 732 (4th Cir. 2002); *Black Prince Distillery, Inc. v. United States*, 586 F. Supp. 1169, 1174 (D.N.J. 1984); *Merlin v. Sanders*, 144 F. Supp. 541, 543 (N.D. Ga. 1956) ("Willful misrepresentation is not required."), aff'd, 243 F.2d 821 (5th Cir. 1957). *Contra United States v. Northern Trust Co.,* 93 F. Supp. 2d 903, 909-10 (N.D. Ill. 2000) (holding that misrepresentation must be intentional or knowing). Gross negligence is generally held to be enough to meet this requirement. See *Lane*, 286 F.3d at 731; *Black Prince Distillery*, 586 F. Supp. at 1174.

The parties focused on Pegasus' second Form 944 in which Pegasus incorrectly used Calsafe's TIN number on the first page and correctly used its own TIN on the

---

[4] Section 7405 (and thus §6532(b)) have "been held to apply in a variety of circumstances including where the IRS makes a refund based upon an improper credit to a taxpayer's account." *United States v. MacPhail*, 313 F. Supp. 2d 729, 734 (S.D. Ohio 2004)(citing numerous cases).

-9-

second page. This error does not satisfy §6532(b) because it is the type of innocent "misstatement" that the Courts have explicitly excluded from "misrepresentation," as a clerical error that the IRS almost immediately corrected it is not "material," and the IRS has presented no evidence that it induced the Refunds.

The first 944-X does contain a "misrepresentation of a material fact" within the meaning of §6532(b). Pegasus intentionally or at the very least with gross negligence misstated the date when it started employing its employees – stating it was October 2008 when it was in fact April 2008. This misrepresentation was material in the context of liability for employee taxes and credit for tax deposits made.

However, the record does not show that this misrepresentation "induced" the Refunds. Rather, simple failure within the IRS really induced the Refunds. This 944-X should have induced the IRS to transfer both the liability and the deposit credit to Calsafe's account. Instead, as Ms. Harrison admits in her declaration:

> When the IRS implemented the transfer from Pegasus' 944 account to Calsafe's 944 account, the IRS only transferred the deposits made, but **failed to transfer the corresponding liability.**

Harrison Dec. ¶ 17 (emphasis added). As the IRS has not shown a misstatement of material fact induced the Refunds, the two-year statute of limitations applies and the IRS' claim to the Refunds is time barred.[5]

Counsel for the IRS argued at the hearing on this motion (although not in the papers) that, even if the statute cannot be extended to five years under §6532(b), the IRS also has a claim for unjust enrichment not subject to the statute of limitations of §6532(b). This argument is incorrect.

---

[5] Although it is the focus of much of the argument, the Trustee's culpability with respect to her treatment of the Refunds is not relevant to this statute of limitations issue.

-10-

> The United States misperceives the issue in this matter as whether the plaintiffs were initially entitled to the money. The dispositive issue is instead whether the IRS has followed the law in collecting the money it mistakenly sent to the plaintiffs. While this court is aware that the plaintiffs may receive a windfall, the IRS can only recover the sum pursuant to powers granted by Congress.  The United States Code allows the IRS to bring a civil action under 26 U.S.C. § 7405 to recover refunds mistakenly paid to the wrong taxpayer. *See United States of America v. Young*, 79-2 U.S.T.C. para. 9609 (D. Del. 1979). . . . The short answer to the defense is that the Radinskys are entitled to the money unless the IRS brings a civil action within two years. 26 U.S.C. 6532(b). Congress certainly knew that by imposing a strict statute of limitations persons who, for example, received erroneously large refunds could "keep money that did not belong to them" (defendant's motion at 2 n.2) unless the IRS promptly brought a civil action to recover the money. Any windfall is a result of Congressional action . . . .

*Radinsky v. United States*, 622 F. Supp. 412, 414 (D. Colo. 1985)*.*

> The Court recognizes that this ruling permits an individual to keep monies sent to her by the government notwithstanding the fact she has no legitimate claim of right to such funds except that, under the law, the United States cannot command their return after the applicable statute of limitations has expired. Clearly, this is not a satisfying result.
> However, the Court offers two observations for those who share the Court's discomfort with the outcome in this case. First, the collection power of the United States is great and has the capacity to do enormous harm to any individual or business taxpayer. Therefore, strict adherence to the restrictions contained in the law is not only advisable, but mandatory.

*Moran v. United States,* 953 F. Supp. 354, 357-358 (N.D. Okla. 1996).

As erroneous refund recovery suits typically allege that defendants have received money they are not entitled to, allowing an unjust enrichment exception to the statute of limitations would essentially write the limitation out of the statute.

Ruling

Motion granted.  This matter does not clearly fall within any of the adversary proceedings enumerated in Fed. R. Bankr. P. 7001, although entitlement to property is often resolved through an action for declaratory relief.   As a precaution, the Court will

delay entry of the order granting the motion for 30 days. If no one commences an adversary proceeding for declaratory relief with respect to the Refunds by that time, the order granting the motion will be entered.

###

Date: April 11, 2014

Geraldine Mund
United States Bankruptcy Judge